## HOLSTEIN v. COUNTY BOARD OF COMMISSIONERS OF EDGEFIELD CO.

FOREIGN JUDGMENTS—COMITY—INJUNCTION—U. S. CONSTITUTION—R. R. AID BONDS.—Where the Circuit Court of the United States declares a statute authorizing townships to subscribe bonds in aid of a railroad constitutional, this Court will give full faith and credit to such judgment by refusing to enjoin the corporate authorities of such townships from doing acts required to carry into effect such judgment, although this Court has previously declared similar acts unconstitutional.

Petition by J. D. Holstein and James E. Hart in original jurisdiction of this Court, for injunction against the County Board of Commissioners of Edgefield County, in the following words:

"First. That your petitioner, J. D. Holstein, is a citizen of the county and State above mentioned, and is a resident and taxpayer in Wise Township, in said county; and that your petitioner, James E. Hart, is a citizen of the said county and State, and is a resident and taxpayer in Pickens Township, in said county.

"Second. That on the 22d day of December, A. D. 1883, the General Assembly of said State passed an act entitled 'an act to authorize counties, townships, cities and towns interested in the construction of the Carolina, Cumberland Gap and Chicago Railway Company to subscribe to the capital stock of said company;' in and by which act, and in section 1 thereof, it is among other things provided: 'That for the purpose of aiding in raising the capital stock of the said Carolina, Cumberland Gap and Chicago Railway Company, in addition to private subscription, it shall and may be lawful for any county, township, city or town in any county through which the said railway runs, or which is interested in its construction, to subscribe to the capital stock of said company such sum or sums in bonds or money as a majority of their qualified voters may authorize the county commissioners of such county or the municipal authorities of such

city or town to subscribe, anything contained in the charter of such municipal corporations to the contrary notwithstanding.'

"Third. That pursuant to the authority contained in and granted by said act, the voters of Pickens Township, in said county, subscribed the sum of $15,000 to the capital stock of the said railway, and likewise, pursuant to such authority, the voters of Wise Township, in said county, subscribed the sum of $12,500 to the capital stock of the said railway; and pursuant to said subscriptions the county commissioners of said county, on the 1st day of May, 1888, issued bonds in behalf of Pickens Township of the denominations prescribed in and by said act, amounting in the aggregate to the sum of $15,000; and on the same day the said county commissioners, pursuant to said authority, issued bonds in the denominations prescribed in said act on the part of Wise Township, amounting in the aggregate to the sum of $12,500.

"Fourth. That after all the payments of principal and interest we have made upon said bonds so issued, as aforesaid, in behalf of said townships, your petitioners are informed that the holders of said bonds now claim that there is still due and remaining unpaid thereupon, in the aggregate about the sum of $40,000, to wit: that there still remains unpaid upon the bonds issued in behalf of Pickens Township the sum of $22,000, and upon the bonds issued in behalf of Wise Township the sum of $18,833.75, together with interest on each of said sums from the 1st day of January last. That for the purpose of paying the sums so claimed to be due as aforesaid upon the said bonds, the county commissioners of the county of Edgefield, consisting of J. M. Bell, Jr., R. A. Cochran and A. G. Williams, claiming to act as the corporate authority for the said townships, have resolved forthwith to issue, and now intend immediately to issue, negotiable coupon bonds for and on behalf of the said townships, that is to say: the said board of county commissioners have resolved to issue for and in behalf of Wise Township negotiable coupon bonds amounting in the aggregate to the sum

of $13,800; and for Pickens Township the said county commissioners have resolved to issue such negotiable coupon bonds amounting in the aggregate to the sum of $16,100.

"Fifth. Your petitioners are informed, believe and allege, that the said act of the legislature, so authorizing the said townships to subscribe to the capital stock of said railway, was and is unconstitutional, on account of the absence of a corporate purpose of the townships incorporated by said act; and that, therefore, the bonds so issued by the said county commissioners on the 1st day of May, 1888, were and are illegal, null and void, and constituted, and do now constitute, no valid legal indebtedness against the said townships; and that, therefore, the people of the said townships are not now obligated to pay the same. On which account your petitioners allege that the county commissioners of said county should not now be permitted to issue new bonds against said townships, in accordance with their resolution above mentioned, and thereby impose upon the people of the said townships a grievous debt, where none now exists in law. On which account your petitioners desire that the said county commissioners should not be permitted so to issue such bonds; but that they should be restrained and perpetually enjoined from executing and carrying into effect their said resolution so to do. Your petitioners and all other taxpayers of said townships are without remedy to permit the imposition of the illegal debt that will result from the execution of the programme contemplated by said resolution of said board, except by the aid of this honorable Court.

"Wherefore, your petitioners pray that the said county commissioners may be restrained and perpetually enjoined from signing, sealing and issuing such bonds, in accordance with their resolutions above referred to.

"That the process of this honorable Court may forthwith issue, directed to the said county commissioners, requiring them to show cause on a day to be appointed why they should not be restrained and perpetually enjoined from issuing such bonds; and that in the meantime an order may

be issued by this honorable Court preventing and restraining them from issuing such bonds until the further order of the Court."

J. M. Bell, Jr., R. A. Cochran and A. G. Williams, constituting the board of county commissioners in and for the county of Edgefield, make the following return to the rule to show cause why the prayer of the petition herein should not be granted:

"First. That they admit the allegations made by and contained in paragraphs 1, 2, 3 and 4 of the petition.

"Second. They deny the allegation in paragraph 5 of the petition, that the 'Act of the legislature so authorizing said townships to subscribe to the capital stock of said railway, was and is unconstitutional, on account of the absence of a corporate purpose of the townships incorporated by said act; and that, therefore, that the bonds so issued by the said county commissioners on the 1st day of May, 1888, were and are illegal, null and void, and constituted, and do now constitute, no valid legal indebtedness against the said townships.' On the contrary, these respondents allege that the said bonds so issued constitute a valid and legal indebtedness against said townships; and that said bonds have been so declared and adjudged as valid and binding upon said townships in suits brought against said townships. On which account these respondents allege that the question of the validity of said bonds is *res adjudicata,* and should not now be made by the petitioners or other citizens of the said townships, and should not now be considered by this honorable Court. That is to say: These respondents respectfully show unto the Court, that heretofore a suit was instituted in the District Court of the United States for the District of South Carolina, by Henry A. V. Post, surviving copartner of the firm of Post & Pomeroy, against the said Pickens Township, to recover 'certain past due instalments of interest and coupons upon and attached to certain bonds issued by the said township,' under and by authority of the act of 1883, re-

ferred to in the petition herein, said coupons so sued on being attached to the bonds issued on the 1st day of May, 1888, and mentioned in the petition.    That said suit came on to be tried on the 8th and 10th days of April, 1889, and resulted in a verdict and judgment against said Pickens Township in the sum of $11,392.12.    That at the same time a similar suit was instituted in the same Court by the same party against Wise Township upon coupons on bonds issued by said township under the same act, being the identical bonds described in the petition, which suit came on to be tried on the 7th day of April, 1900, and resulted in a verdict and judgment in favor of said plaintiffs against said Wise Township in the sum of $11,973.75.    That an appeal was taken from the judgment so rendered by the District Court in the case against Pickens Township to the United States Circuit Court of Appeals, it being understood and agreed that the result of said appeal was to be equally applicable to the judgment so rendered against Wise Township; and, upon such appeal, the judgment so rendered against Pickens Township by the District Court was affirmed.    That in and by said judgment it has been finally determined and adjudicated that the bonds so issued by and in behalf of Pickens and Wise Townships are valid and binding obligations of said townships respectively.    In reference to the matters hereinbefore represented, your respondents further allege that the executions issued upon the said judgments so rendered by the District Court having been returned wholly unsatisfied, the said District Court issued against the predecessors of these respondents in 1900 a rule to show cause why a mandamus should not be issued from said Court, requiring a tax levy upon the property of each of said townships to be made sufficient to pay and discharge each of said judgments in full.    That the predecessors of these respondents—being the identical persons who now constitute the said board, with one exception—made full return to said rule, and submitted for the consideration of said Court every reason that appeared to their attorneys why the said bonds

did not constitute valid obligations of said townships, and why said mandamus should not issue.    Nevertheless, when the matter came up to be heard, the Court adjudged said return to be insufficient, and made said rule absolute. Thereupon, the county commissioners in and for said county made a· levy of about 28 mills upon the property of said townships, and the auditor of the county is required in and by said mandamus to place such levy upon his tax duplicate.

"Third. Your respondents further allege, that regarding such levy burdensome beyond the ability of the people to pay or bear, they desire to grant any relief that may be within their power under the law; and, therefore, they adopted the resolution to which reference is made in paragraph 4 of the petition.    But these respondents did not adopt such resolution arbitrarily or in ·disregard either of their duty or the best interest of the people, but acted pursuant to the judgment of the people of said township as expressed in a mass meeting called for the purpose of considering what should be done under the circumstances. That at said mass meeting the following resolutions were adopted by the people of the said townships : 'Resolved, That the committee heretofore charged with the duty of looking after the interest of the townships in the matter of railroad bonds, are hereby authorized to offer to the attorneys of the bondholders the sum of $30,000 in full settlement of the entire liability of Pickens and Wise Townships on account of such bonds, to be paid within ninety days after notice of the acceptance of such offer.    Resolved, further, That in the event that said offer shall be accepted, said committee are instructed to cause new bonds to be issued by the county commissioners for said townships, to be divided between said townships in proportion to the amount now outstanding against them respectively, sufficient to raise said sum of $30,000, and thereupon to negotiate for the floating of said bonds, and for the payment of said sum to the bondholders.' Your respondents further show, that on the 9th day of March, 1896, the General Assembly of this State passed an

act entitled : 'An act to authorize and empower cities, towns, townships and other municipal corporations to issue negotiable coupon bonds for the refunding or payment in whole or in part of bonded indebtedness, and any unpaid past due interest thereon, existing at the time of the adoption of the present Constitution,' under and by authority of which act and in sec. 1 thereof it is, among other things, provided : "That any city, town, township or other municipal corporation, for the purpose of refunding or paying the whole or any part of its bonded indebtedness existing at the time of the adoption of the present Constitution, and any unpaid past interest thereon, shall be, and it is hereby, authorized and empowered to issue its negotiable coupon bonds, from time to time and in such amounts as shall be proper, and to use and dispose of the same either by sale orexchange, for the purposes aforesaid.'    That the act last above mentioned was amended by the General Assembly by an act approved February 11th, 1902, by striking out sec. 5 thereof, and by inserting in lieu of said section another and additional sec. 5, in and by which amendment it was among other things provided : "That for the·purpose of issuing the bonds provided for in this act, the county boards of commissioners of the counties of this State, or such other officers as may hereafter 'be charged with the performance of the same duty, shall be, and they are hereby declared to be, the proper corporate authority for the townships of their respective counties to issue such bonds.'

"Wherefore, your respondents allege, that by the said act of 1896, as so amended by the act of 1902, they are fully authorized to issue the bonds in accordance with their said resolution; and that hence, under the conditions so hereinabove recited, it is their duty so to issue such bonds, and it is for the best interest of the people of said townships that said bonds should be issued.

"Wherefore, your respondents respectfully submit that the injunction for which the petitioners pray should not be granted, but, on the contrary, that they should be authorized

to issue bonds in accordance with their said resolutions, and that said bonds should be declared by this honorable Court when so issued, to be valid obligations of said townships respectively."

*Messrs. S. McGowan Simpkins* and *E. H. Folk,* for petitioners.

*Messrs. B. E. Nicholson* and *Sheppard Bros.,* contra.

July 7, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is a petition addressed to the Court in the exercise of its original jurisdiction for an injunction restraining the county board of commissioners of Edgefield County, as the corporate authority of Pickens and Wise Townships, from issuing negotiable coupon bonds, in accordance with the provision of an act entitled: "An act to authorize and empower cities, towns, townships and other municipal corporations, to issue negotiable coupon bonds for the refunding or payment, in whole or in part, of bonded indebtedness, and any unpaid past due interest thereon, existing at the time of the adoption of the present Constitution," approved 9th March, 1896, and amended 11th February, 1902. The petitioners base their right to an injunction on the ground that the act authorizing the said townships to subscribe to the capital stock of the Carolina, Cumberland Gap and Chicago Railway Co. was unconstitutional on account of the absence of a corporate purpose of the townships incorporated by said act and, therefore, that the bonds issued in pursuance of said act did not constitute a valid bonded indebtedness against said townships. The respondents contend that the bonds so issued constitute a valid and legal indebtedness against said townships, and that they have been so declared and adjudged in suits brought against said townships in the Circuit Court of the United States. The facts in detail will be seen by reference to the petition and return, which will be set out in the report of the case. Stat-

utes similar to that authorizing said townships to subscribe
to the capital stock of said railroad company have been con-
strued in *Floyd* v. *Perrin,* 30 S. C., 1, 8 S. E. R., 14;
*Whitesides* v. *Neeley,* 30 S. C., 31, 8 S. E. R., 27; *State* v.
*Whitesides,* 30 S. C., 579, 9 S. E. R., 661; *State* v. *Neeley,*
30 S. C., 603; *Construction Co.* v. *Township,* 49 S. C., 535,
27 S. E. R., 570; *Coleman* v. *Broad R. Township,* 50 S. C.,
321, 27 S. E. R., 774; and in all of these such acts were held
to be unconstitutional.

The United States Circuit Court has, however, construed
the act authorizing said townships to subscribe to the capital
stock of the Carolina, Cumberland Gap and Chicago Ry. Co.
to be constitutional, and rendered judgments against said
townships which are binding on these petitioners. The
question to be determined by this Court is what effect shall
be given to said judgments. Sec. 1, art. IV., Constitution
of the United States, provides that "full faith and credit
shall be given in each State to the public acts, records and
judicial proceedings of every other State." In the case of
*McCollough* v. *Hicks,* 63 S. C., 542, it was held that this
provision applies to a judgment of the Circuit Court of the
United States. That Court has adjudged said bonds to be
valid and legal obligations against said townships, and this
question must be regarded as settled as to those bonds. If
we should allow this question as to these bonds to be again
brought in review, we would fail to give full faith and credit
to the judicial proceedings of the United States Circuit
Court.

Having reached this conclusion, it necessarily follows that
the petition must be dismissed, and it is so adjudged.